UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

XIMENA ANDREA BAHAMONDES INDO, on behalf of herself,
FLSA Collective Plaintiffs and the Class Members,

                         Plaintiffs,                          Docket No.:21-CV4279

                         -against-                           **COMPLAINT**

CONSTANTINO SCOUROUDIS, GEORGE LABOS
and GCN RESTAURANT LLC d/b/a OPA GRILLE,

                         Defendants,

-------------------------------------------------------------------X

Plaintiff XIMENA ANDREA BAHAMONDES INDO (hereinafter, "Plaintiff"), on behalf of
herself and other similarly situated employees, by and through her undersigned attorneys,
PERVEZ & REHMAN, P.C., files this Class and Collective Action Complaint against
Defendants, CONSTANTINO SCOUROUDIS ("SCOUROUDIS"), GEORGE LABOS
("LABOS"), and GCN RESTAURANT LLC d/b/a OPA GRILLE ("OPA GRILLE")
(collectively, the "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201,
   *et. Seq.* ("FLSA"), she is entitled to recover from the Defendants: (1) unpaid wages; (2) unpaid
   overtime compensation; (3) liquidated damages; (4) prejudgment and post-judgment interest;
   and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law, she is entitled to recover
   from the Defendants: (1) unpaid wages; (2) unpaid overtime compensation; (3) unpaid "spread
   of hours" premium for each day they worked in excess of ten (10) hours; (4) failure to issue

accurate wage statements; (5) liquidated damages; (6) prejudgment and post-judgment interest; and (7) attorneys' fees and costs.

3.  Plaintiff brings these FLSA claims on behalf of herself and all other similarly situated employees of Defendants and her NYLL claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6) year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

3.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4.  On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020, and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the

tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued

Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days

through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38,

tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued

Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5,

2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of

limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed

Executive Order 202.60, which extended the tolling period an additional thirty (30) days to

October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67,

which extended the tolling period to November 3, 2020. In total, the Executive Orders set

forth herein provided for a toll of two hundred and twenty-eight (228) days.

## **PARTIES**

4. Plaintiff, XIMENA BAHAMONDES, is a resident of Nassau County, New York.

5. Upon information and belief, Defendant GNC RESTAURANT LLC d/b/a OPA GRILLE ("OPA GRILLE") is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 432 Hillside Avenue, Williston Park, NY 111596.

6. Upon information and belief, Defendant CONSTANTINO SCOUROUDIS (hereinafter, "SCOUROUDIS"), is the owner and officer, director, shareholder, manager, and proprietor of OPA GRILLE and, who actively participated and continues to actively participate in the day-to-day operations of OPA GRILLE, and acted intentionally and maliciously and is employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R.

§ 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with OPA GRILLE .

7. Upon information and belief, Defendant GEORGE LABOS (hereinafter, "LABOS"), is the owner and officer, director, shareholder, manager, and proprietor of OPA GRILLE and, who actively participated and continues to actively participate in the day-to-day operations of OPA GRILLE, and acted intentionally and maliciously and is employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with OPA GRILLE .

8. At all relevant times, OPA GRILLE  was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

9. Defendants SCOUROUDIS, LABOS, and OPA GRILLE employed Plaintiff, BAHAMONDES, in Nassau County, New York, to work as a host and waitress.

10. The work performed by Plaintiff was directly essential to the business operated by Defendants.

11. Defendants knowingly and willfully failed to pay Plaintiff's minimum wages and her lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

12. Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

13. Defendants knowingly and willfully failed to allow Plaintiff to take lawful breaks.

## STATEMENT OF FACTS

14. Throughout all times relevant to this action, Defendants hired Plaintiff as a host. She was then also given the title of waitress.

15. Defendants employed Plaintiff BAHAMONDES, in Nassau County, New York, during the relevant time period, beginning in or around September 2018 through January 2021.

16. As a host, she was required to greet and seat guests, bag food, answer the phone, and bring liquor up from storage. However, unlike other non-Hispanic hosts, she had to clean the bar, floor, mop, clean menus, and clean bathrooms.

17. As a waitress, her job including responsible for greeting customers, taking food and beverage orders, deliver orders to patrons, resolve any complaints, and process customer payments. However, unlike non-Hispanic waitresses, she had to clean the bar, floor, mop, clean menus and clean bathrooms.

## WAGE & HOUR VIOLATIONS

18. When Plaintiff BAHAMONDES first began her employment as a host, she worked approximately twenty (20) hours per week. However, she needed more hours and within three weeks she was working up to forty (40) hour per week.

19. Within the first six (6) months of her employment, she was also assigned waitress job duties and spent her work hours hosting and/or waitressing.

20. In or around April 2018 until the COVID-19 Pandemic in March of 2020, she was working six (6) or seven (7) days a week and well over forty (40) hours per week.

21. Plaintiff worked an average of forty-five (45) to fifty-five (55) hours per week.

22. She was scheduled for some hours as a waitress and some hours as a host.

23. She was paid on check for her hours worked as a host at $12 per hour.

24. She was paid less than minimum wage for some hours that she worked as a waitress.

25. Plaintiff was paid straight time, in cash, for the some of the waitress hours and overtime hours she worked but was not paid at an overtime rate. The straight time payments were in cash and there were some overtime hours that she was not compensated at all.

26. During this time period, Plaintiff BAHAMONDES frequently worked from 10:00 a.m. to 9:00 p.m. as a host and 11 a.m. start time as a waitress.

27. She often worked ten (10) hour days without spread of hours pay.

28. Plaintiff, and others similarly situated were sent work schedules via group text message. These schedules clearly indicate that Plaintiff BAHAMONDES was scheduled to work well over forty (40) hours per week.

29. Plaintiff was provided inaccurate paystubs that, purposefully, did not reflect the full and correct amount she worked.

30. When the COVID-19 pandemic hit, Plaintiff's work hours were reduced, and she was no longer working overtime.

31. During the majority of Plaintiff BAHAMONDES 's employment, she was not paid full overtime compensation. Work performed above forty (40) hours per week was not paid at the statutory rate of "time and one-half" as required by state and federal law.

32. As a result of Defendants' failure to compensate the Plaintiff for her overtime work, Plaintiff is owed wages which remain unpaid to date.

33. Moreover, Defendants did not comply with the NYLL's wage statement and wage notice provisions. Defendants did not issue accurate wage notices to employees as required by law. Accordingly, Defendants are liable for damages for each employee pursuant to NYLL § 198.

**DISCRIMINATION**

34. Throughout her employment, Plaintiff worked without issue.  She always completed her tasks and never received poor performance evaluations or any written/verbal warnings.

35. However, throughout her employment, as one the few Hispanic employees working on the front-end of the store, she was treated poorly by Mr. Scouroudis on account of her race and national origin.

36. Her daughter, Tabatha, was also employed by Defendants as a host since she was 14 years old.

37. Tabatha and Plaintiff were the only Hispanic employees in the front end of the establishment.

38. Mr. Scouroudis often commented on Plaintiff's accent and told her that she could not speak English properly.

39. He told her that she had to work in the back of the establishment and was told to limit how much she speak to customers.

40. When other non-Hispanic employees sat down or took a break, Plaintiff was sent by Mr. Scouroudis to clean the bathrooms.  This is not her job as a waitress or a host. Tabatha was also sent to clean bathrooms.

41. In the morning when Plaintiff would arrive to work, all non-Hispanic employees would wait at the bar until they had to start working while Plaintiff and Tabatha were sent to clean. They were treated as inferior.

42. Mr. Scouroudis also unfairly enforced company policies. For example, on January 19, 2020, Mr. Scouroudis told Ms. Bahamondes that she could not wear certain black pants to work but permitted others to wear similar pants. The apparent reason for the different treatment is because the other employees (who were non-Hispanic) did not have a "big butt" like her. He told her that he did not want his customers to "die of a heart attack because of her big butt." No other employees were subjected to such comments regarding their physical appearance.

43. This was not the first or only time Mr. Scouroudis made demeaning and derogatory comments about women. He often would sit at the bar with co-workers or his friends calling women "bitches" and even referred to Plaintiff's co-workers as such.

44. On January 7, 2021, Plaintiff went to work and realized during her lunch that she was unable to taste the food she was eating. She immediately informed Mr. Scouroudis and left for the hospital to get examined. She knew this was a symptom of COVID -19.

45. On January 8, 2021, Plaintiff was diagnosed with COVID-19 and immediately informed her employer via text to her manager, Jeannie Messina ("Ms. Messina").

46. On January 16, 2021, Plaintiff received a call from the Department of Health that she could return to work. She texted Ms. Messina that Plaintiff was cleared to return to work and Ms. Messina advised her that Mr. Scouroudis was very mad at her and that she does not know if Plaintiff will be allowed back.

47. Mr. Scouroudis told all of the employees that Plaintiff brought the virus to the restaurant. However, he did not publicly blame or accuse the two other employees that were non-Hispanic, who had tested positive for the virus after the New Year. Both non-Hispanic employees were allowed to return to work.

48. On January 15, 2021, Plaintiff texted Mr. Scouroudis that she had finished her quarantine and asked if she could return to work. Plaintiff reiterated that she did not know she was sick when she came to work and the minute Plaintiff realized she exhibited symptoms, she notified him and left work. He did not respond to her text.

49. On January 18, 2021, Mr. Scouroudis called her and told Plaintiff that she could not come back to work. He told Plaintiff that she brought COVID into the restaurant.

50. Plaintisff was illegally terminated by her employer because she tested positive for COVID-19.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

51. Plaintiff brings this action individually and as a class representative Plaintiff on behalf of herself and all other current and former non-exempt employees who have been or were employed by Defendants since 2014, to the entry of judgment in this case (the  "Collective Action Period"), and who failed to receive overtime compensation at the rate of time and one-half for all hours worked in excess of forty (40) per week (the "Collective Action Members").

52. Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

53. Plaintiff BAHAMONDES will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff BAHAMONDES has no interests that are contrary to or in conflict with those members of this collective action.

54. This action should be certified as a collective action because the prosecution of separate

actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members who are not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

55. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

56. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

57. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

     a.    Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

     b.    Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Collective Action Members;

     c.    What proof of hours worked is sufficient where the employer

fails in its duty to maintain time records;

d. Whether the Defendants failed to pay Plaintiff and the Collective Action Members minimum wages in violation of the FLSA;

e. Whether the Defendants unlawfully failed to pay Plaintiff and the Collective Action Members overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) per week in violation of the FLSA;

f. Whether the Defendants' violations of the FLSA are defined as willful within the context of the FLSA; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to: compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

58. Plaintiff knows of no difficulty that will be encountered in management of this litigation that would preclude its maintenance as a collective action.

59. Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

60. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

61. All said persons, including Plaintiff are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under FRCP 23.

62. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. Although the precise number of such persons is unknown, because the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

63. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

64. Plaintiff BAHAMONDES is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

65. A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a Class Action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a Class Action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class Action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications. With respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to fashion methods to efficiently manage this as a Class Action.

66. Defendants and other employees throughout the state violate the NYLL. Current

employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class Actions provide Class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

67. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a.  Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

   b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendant did not pay the Class members properly;

   c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class Members for their works;

   d.  Whether Defendants provided Plaintiff and the Class with a spread time premium as required by NYLL; and

   e.  Whether Defendants properly notified Plaintiff and the Class Members of their hourly rate and overtime rate.

## STATEMENT OF CLAIM

## COUNT I

### [Violation of the Fair Labor Standards Act]

68. Plaintiff repeats and re-alleges the allegations set forth above.

69. At all relevant times, upon information and belief, Defendants are and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

71. At all relevant times, Defendants had gross revenues excess of $500,000.

72. Defendants knowingly and willfully operated their business with a policy of not paying either proper overtime wages to Plaintiff and other similarly situated employees.

73. Plaintiff was entitled to be paid at the statutory rate of "time and one-half" for all hours worked in excess of the maximum hours provided for in the FLSA.

74. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

75. At all relevant times, Defendants have, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of "time and one -half" to Plaintiff for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.,* including 29 U.S.C. §§ 207(a)(l) and 215(a). Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when Defendants knew or should have known such was due and that

non-payment of overtime compensation would financially injure Plaintiff.

76. As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff, the Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, *et seq.,* including 29 U.S.C. §§ 21 l (c) and 215(a).

77. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

78. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

79. Due to the intentional, willful and unlawful acts of the Defendants, Plaintiff suffered damages consisting of unpaid minimum wages, overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

80. Plaintiff is entitled to an award of his reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

81. Plaintiff repeats and re-alleges the allegations set forth above.

82. At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

83. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates of not less than time and one-half for each hour worked

in excess of forty (40) hours in a workweek.

84. Defendants knowingly and willfully violated Plaintiff, Collective Plaintiffs and Class Members rights by failing to pay Plaintiff's "spread of hours" premium for each day they worked in excess of ten (10) hours pursuant to New York State Department of Labor Regulations § 142.2-4.

85. Defendants failed to furnish Plaintiff with a statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 142-2.7.

86. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 142-2.6.

87. Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants their unpaid wages, unpaid overtime compensation, unpaid "spread of hours" premium for each day they worked in excess of ten (10) hours, failure to issue wage statements, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al.* and S 198.

88. Plaintiff is entitled to liquidated damages pursuant to New York Labor Law § 663(1).

## COUNT III
### [Disability Discrimination Under the NYSHRL]

89. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

90. Pursuant to the NYSHRL, it is unlawful "[f]or an employer, because of an individual's …disability…to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment." NYSHRL §
296(1)(a).

91. Further, it is "unlawful discriminatory practice for an employer … to refuse to provide
reasonable accommodations to the known disabilities … of an employee….in connection with
a job" unless it can be demonstrated to impose an undue hardship on the operation of an
employer's … business, program or enterprise. NYSHRL §296(3)(a) and (b).

92. Defendants knew or should have known of Plaintiff's actual or perceived disability. Here,
Defendants were aware that Plaintiff contracted COVID-19 and had to quarantine per state
guidelines.

93. Defendants engage in an unlawful discriminatory practice by treating her less well because of
her actual or perceived disability, failing to provide Plaintiff with a reasonable accommodation
for her actual or perceived disability, failing to engage in a good faith interactive process with
Plaintiff about her reasonable accommodation requests, and ultimately terminating her due to
her actual or perceived disability.

### COUNT IV
### [Retaliation Under the NYSHRL]

94. Plaintiff repeats and re-alleges the allegations set forth above.

95. Pursuant to the NYSHRL, Executive Law §296(7), "[i]t shall be an unlawful
discriminatory practice for any person engaged in any activity to which this section
applies to retaliate or discriminate against any person because he or she has opposed
any practices forbidden under this article or because he or she has filed a complaint,
testified or assisted in any proceeding under this article."

96. Plaintiff engaged in protected activity under the NYSHRL by making reasonable
accommodation requests given her disability having contracted the Novel COVID-19

virus during the course of her employment with Defendants, and thus being required to quarantine for a determinate amount of time as per the March 22, 2020 New York Pause Executive Order.

97. Upon information and belief, Defendants were aware of Plaintiff's protected activity and her status as a person with a disability and/or perceived disability.

98. Defendants undertook an adverse employment action against Plaintiff by terminating her blaming her for bringing the Virus into the workplace.

99. Defendants blamed Plaintiff for bringing COVID-19 to the workplace.

100. Defendant's conduct was done in conscious disregard of Plaintiff's rights.

101. By the foregoing reasons, Defendants are liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law including but not limited to compensatory damages, punitive damages, back pay, front pay, interest, attorneys' fees, and costs.

## COUNT V
### [Race and National Origin Discrimination Under the NYSHRL]

102.    Plaintiff repeats and re-alleges the allegations set forth above.

103.    Pursuant to NYSHRL "[i]t shall be an unlawful discriminatory practice [f]or an employer … to discriminate against any individual because of … race … national origin …" NYSHRL §296(b).

104.    Defendant committed an unlawful discriminatory practice by habitually treating Plaintiff as inferior to other non-Hispanic employees based on her race and national origin.

105.    Defendant willfully and knowingly discriminated against Plaintiff based on her race and national origin.

## COUNT V
### [Sexual Harassment Under the NYSHRL]

106.    Plaintiff repeats and re-alleges the allegations set forth above.

107.    Pursuant to NYSHRL "[i]t shall be an unlawful discriminatory practice for an employer … to subject any individual to harassment because of an individual's … sex." NYSHRL §296(h).

108.    Further, "Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories." NYSHRL §296(h).

109.    Defendant made degrading comments regarding Plaintiff's appearance, called female "bitches", and had her performing cleaning tasks that others did not have to do.

110.    Defendant engaged in an unlawful discriminatory practice by sexually harassing Plaintiff.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on behalf of herself, and FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

(a)    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in

this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b)    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs and Class Members;

(c)    A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States, FLSA and New York State laws;

(d)    All damages that Plaintiff and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff and FLSA Plaintiffs would have received but for the Defendants' unlawful payment practices including unpaid wages, minimum wages, overtime wages, spread of hours compensation among those alleged herein;

(e)    Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

(f)    Damages, including compensatory and emotional damages for discrimination and retaliation under NYS laws;

(g)    An order tolling the statute of limitations;

(h)    Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, other costs, and an award of a

service payment to Plaintiffs;

(i)      Pre-judgment and post-judgment interest, as provided by law;

(j)      Costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

Granting Plaintiff and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated:   Melville, New York
         July 29, 2021

By: /s/ Nadia M. Pervez

Aneeba Rehman
Nadia M. Pervez
*Attorneys for Plaintiff*
Pervez & Rehman, P.C.
68 South Service Road
Suite 100
Melville, NY 11747
Tel: (631) 427-0700
arehman@pervezrehman.com
npervez@pervezrehman.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
XIMENA ANDREA BAHAMONDES INDO, on behalf of herself,
FLSA Collective Plaintiffs and the Class Members,


                              Plaintiffs,

                              -against-                              **VERIFICATION**

CONSTANTINO SCOUROUDIS, GEORGE LABOS
and GCN RESTAURANT LLC d/b/a OPA GRILLE,

                              Defendants,

-------------------------------------------------------------------X

STATE OF NEW YORK )
                              ss.:
COUNTY OF SUFFOLK)


    I, XIMENA ANDREA BAHAMONDES INDO, am a Plaintiff in the within action for. I

have read the foregoing Complaint and know the contents thereof. The contents are true to my

own knowledge except as to matters therein stated to be alleged upon information and belief,

and as to those matters I believe them to be true.


                              _____

                              XIMENA ANDREA BAHAMONDES INDO


Sworn to before me on this 29 day

of July, 2021.

                              _____
                              Notary Public

NADIA M. PERVEZ
Notary Public. State of New York
No. 02PE6241234
Qualified in Suffolk County
Commission Expires May 9, 2015 2023

## **CONSENT TO SUE UNDER FAIR LABOR STANDARDS ACT**

I, XIMENA ANDREA BAHAMONDES INDO, am an individual formerly employed by Defendants Mr. Scouroudis, Mr. Labos, and GCN Restaurant LLC d/b/a OPA Grille. I consent to be a Plaintiff in the above-captioned action to collect unpaid wages.

Dated: Melville, New York
July 29, 2021

_____
XIMENA ANDREA BAHAMONDES INDO

Sworn to before me on this 29 day

of July, 2021.

_____
Notary Public

NADIA M. PERVEZ
Notary Public, State of New York
No. 02PE6241234
Qualified in Suffolk County
Commission Expires May 9, 2015 2023